HAYNES, J.
In the case of the Lake Shore and Michigan Southern Railway Company, plaintiff in error, against Edward Litz, defendant in error, a petition in error is filed in this court for the purpose of reversing the judgment of the court of common pleas and setting aside the verdict which was rendered in that court in a case in which Edward Litz was plaintiff and the railway company defendant.
The errors assigned are quite numerous, although they classify themselves into a few general heads. They consist in the error of the court in receiving evidence over the objection of the defendant railway company in overruling the motion for a new trial, which was filed by the defendant company, and refusing to set aside the verdict; and that the court erred in refusing to dismiss the action at the close of the testimony, or instructing the jury to return a verdict for the defendant at the close of the plaintiff’s evidence.
Briefly, the testimony shows that about the 15th of December, *647 I§91, the defendant in error — the plaintiff below — was employed with a number of other parties constituting what is known in railroad parlance a gang of men who were laborers upon that road and were engaged in the construction of a side track at or near a place called Martin’s Point, some five or six miles west of the city of Sandusky. It is claimed and alleged that they were under the charge of one James McCann, who was acting as the foreman of the body. They left Sandusky where most of them resided, on the morning of the 15th for their place of employment upon three handcars, and arrived at the place some forty minutes later, and went to work. They worked during the day, and at nightfall they took the ears to return home. The exact time at which they left, or at which they quit work, is in dispute between the parties. It is claimed on the one hand they left about twenty minutes past four, standard time, and upon the other, on the part of the plaintiff below, that they left some time between five and six o’clock in the evening and after it had become dark. The cars proceeded on their way home, having some five or six persons on each car. After proceeding some four miles or five, and when they were within the limits of the city of Sandusky, the car on which the plaintiff was riding was thrown off the track,and he was thrown from the car, as is alleged, and at that time received severe personal injuries in that he had one of his legs very badly broken. It is claimed that the injury occurred by reason of the negligence of the defendant company in permitting those hand cars to be run on their trip home so near together that when the plaintiff fell from the car he was run over by the approaching ear, the car In the rear, he being upon the middle car of the three, and that he received his injury in that manner.
The ease was tried upon an amended petition, and. in order to arrive at some of the questions that are made it will be necessary to read a portion of it.
“During his said employment and cn said 14th day of December,, 1891, he was under the charge of one James McCann, then in the' employ of defendant, as the foreman and manager of the gang of workmen of which said plaintiff was one; and on said day, while-in the employ of said defendant, and while returning from said' draw-bridge to said city, about the hour of 5:45 P. M., and after it had become dark and it was impossible to discern objects at a distance, while rounding the curve in said railway near Venice in said county, by reason of the negligence and carelessness on the part of the said foreman in operating and running the hand cars on which said gang of men were returning from their labors to San-dusky, running the same negligently and carelessly, without furnishing by said company, or its foreman, danger or signal lights as they were in duty bound to do after darkness had come on, and by not keeping said cars a proper distance apart as they were required to do, said acts of carelessness being done with the full knowledge of said defendant, and its said foreman, and without, any negligence or fault or knowledge on the part of the plaintiff, by reason of the aforesaid negligence on the part of the said defendant, said plaintiff was violently thrown from the hand car up-on which he was riding, run over by another hand car operated: and run by defendant, and his left leg broken, and himself otherwise injured internally.”
Upon the trial of the case the plaintiff was placed upon the stand, and he had proceeded to state some matters in connection with the: *648 circumstances of the injury, when there were propounded to him certain questions by his counsel touching the condition of the car on which they were riding. It was argued on the part of the defendant that' there was no allegation in the petition with regard to any defective condition of the car whatever. Upon a discussion evidently being had before the court, the court finally decided to admit the evidence, and thereupon testimony was offered running through the entire record, tending to show that this car at some time shortly prior to the accident had run into a train of cars and had been seriously injured; chat it was bent — warped—and that upon the day in question, the day upon which this accident happened, for the purpose of arriving at this point where the woru was being done there had been placed on the car a large number of bars of railroad iron for the purpose of pressing the car down-bringing it back to its original position. And the admission of this evidence is assigned here for error.
It was said by the learned judge who tried the case, after the citation of authorities in Whittaker’s Code, that it was shown that a very large latitude was permitted in the introduction of evidence under very general allegations of negligence, and he therefore, under that clause, which he treated as I understand as a general clause, permitted this evidence to be offered. In doing that we think the court erred.
We have had occasion in several cases, both in Lucas and Wood counties, and perhaps in others, to examine into this question. We have examined the authorities that are cited in Whittaker’s Code, and many ethers in connection with them, and we find it is true that under general allegations of negligence that a large latitude is permitted in the introduction of evidence. At the same time the allegation must have some reference to the nature and character of the acts of negligence which caused the injury. I know of no court which holds it is sufficient in a petition to allege that plaintiff has been injured by the negligence of the defendant. An allegation of that kind would be partly, to be sure, an allegation of fact and partly a conclusion of law. The plaintiff must go further and state the acts of negligence. He should state them clearly and explicitly so that upon the face of the pleadings-they would show they were the approximate cause of the injury complained of, but if these acts which go to show that the defendant was guilty of negligence are general in their statement, and not very particular, the courts in that case have held that the court would be authorized to receive evidence.
Now, to refer to this pleading again, we will see that the plaintiff did attempt to allege the acts of negligence of which he complained and which he declaed to be the approximate cause of the injury which he had received. It is true in the outset there is what appears to be a general allegation, but if you will read the whole clause you will see it is connected with the facts that follow, that—
“While ronnding a curve on said railway near Venice in said county, by-reason of the negligence and carelossness on the part of the said foreman in operating and running the hand cars.”
Now, that seems to be a general allegation to which the court referred—
“On which said gang of men were returning from their labors to Sandusky, running the same negligently and carelessly, without furnishing by said company, or its foreman, danger or signal *649 lights as they were in duty bound to do after darkness had come on, and by not keeping said cars a proper distance apart as they are required to, said acts of carelessness being done with the full knowledge of said defendant and its said foreman, and without any negligence or fault or knowledge on the part of the plaintiff, by reason of the aforesaid negligence on the part of the said defendant, said plaintiff was violently thrown from the hand car upon which he was riding, run over by another hand car operated and run by defendant,” and received his injuries.
We think the proper construction of that pleading to be, although it is alleged in the form of a recitation, which is always objectionable in a pleading, that that really is an allegation, that defendant was guilty of negligence in that it did not have signal lights upon its hand cars,and in that the foreman permitted these cars to be run too near together, not keeping them a proper distance apart.
There is no principle better established than that the evidence should be confined to the allegations in the pleadings — should be upon the issues that have been contended on one side and have been answered on the other. To take any other course would in fact nullify the beneficial effects that are supposed to accrue from filing pleadings on the part of the plaintiff and defendant, and the object of a pleading is to tender an issue clear and well defined so that the matter may be tried by a jury, so that they may not be misled on any side issues. This testimony having been offered, and forming, as the record shows, a very large body of the evidence in the record itself, at the conclusion of the testimony and after the arguments of counsel the court when it came to charge the jury, defining the real issues that were being tried, promptly directed and stated to the jury as follows:
“Now, I say to you, gentlemen, that there is no evidence in this case which could warrant the jury in finding that a defective brake upon this hand car or its defective condition in any other respect, or its want of danger or signal lights, if such things existed, had anything at all to do with the occurrence of this accident; and hence you may drop these matters from your minds in considering this case. The only question of negligence there is in the case is whether or not the defendant was guilty of negligence in causing or permitting these handcars to be run so closely together on the occasion when the plaintiff was hurt; and that is the first question I will first ask you to consider.”
The general presumption of law is as held by the supreme court, that where error intervenes it'is prejudicial to the party against whom it intervenes, and it is upon the other side to show either from the record or in some form that it did not intervene to his opponent’s prejudice; but here the court promptly did what it could to remedy the error it had fallen into in permitting the evidence to be offered, and promptly and clearly stated to the jury that they should dismiss that whole matter from their minds and not donsider it at all in investigating the case. How far a charge of that kind will, with the ordinary jury, affect their minds by removing from it the impression they have received from the testimony that has been received is, perhaps donbtful. At any rate,while we hold that it is error,we should not upon that alone reverse the judgment, for the reason that the court has made the statement it did to the jury.
I come now to the issue that was submitted to the jury. The *650 plaintiff on this occasion received very severe injuries — there is no question about that; he hada very badly broken limb. He suffered a severe surgical operation; he was confined to his bed for some eight weeks after that before he was able to go out. A great deal of testimony was submitted to the jury upon the question as to the effects of these wounds, and the effect on his condition the next day, more particularly in regard to the influence they might have upon his memory and his recollection as to what took pjace at the time of the accident. Undoubtedly they had some influence, they would naturally affect his memory in regard to the transaction, more or less. Being placed upon the stand and testifying he says that he, when the cars started, got upon the middle car. He says that he did not assist in “pumping,” although in that respect he is contradicted by two or three other Witnesses, but that he was standing between the brakes upon the south side of the car, when suddenly he felt the car going from the track, and at the same time he was thrown off on the south side, the car going off on the north side. It seems, although I do not think he states it in these words, that he fell between the two tracks — there is a double track there — with his left limb across the rails of the track on which his car was moving. That is his claim at any rate. When asked whether he was struck by either the car he was upon, which was called the second, or by the car which was following, he stated in his testimony in chief he did not know whether he was run over or hit by the second car or the third car; but in cross-examination, however, he sajs he was run over by the third car, and when he was asked how near that car was running to the car on which he was,he says within three feet of that car. He was asked in his testimony as to where that car was with reference to the car he was upon, because he seemed to be standing with his face rather to the west, and he said the darkness was so great he could not see the car.
Now, on the position of those cars, their distance apart, hangs this case. Tne testimony of the plaintiff and the defendant differ as to the_ time at which they left this point. It is claimed by McCann, ■who is the foreman, that they left about half past four" and while it was yet sufficiently light so that the cars could be seen. It is ■claimed by the plaintiff and his witnesses that it was so dark that it was difficult to distinguish objects, and that the cars and their relative positions could not be seen. The position of these cars is left by this evidence in great uncertainty. The plaintiff himself testifies, and he calls two witnesses who were on the car with him — one is Frank Bellman and the other Henry Marske. He shows by the witnesses on the first car and those on the second car that a man by the name of McNivin, who was riding on the first ear, fell from that oar on the track of the railway company, and we think the testimony clearly shows he was run over by the first car and subsequently by the second car. McCann testifies he was upon the first car. His car was thrown off the tracK; he felt it rise up — that was the first he knew anything happened — and went off the track. The other witnesses that were called who stood upon the car do not seem to know much about the car rising. They know they were stopped, and they know also an accident happened to McNivin.
Now, Marske, who was called by the plaintiff, and who was upon the second car and was assisting in pumping, and was standing with his back.towards the east and his face towards the west, *651 says he felt their car rise and start off the track. He says also that he saw McNivin on the track between the rails, and their car evidently went over him. He was not questioned very closely, and his testimony is a trifle obscure as to whether he saw this man while he was pumping and before tbB car got off the track entirely, or whether he saw him after he got off this car and went immediately to where he was. I think, however, he intends to convey the impression he saw him while he was still on the car. Be that as it may, this testimony goes to show McNivin was on the track between the rails, and that he fell off the first ear,and that car went over him, and the second car as it came along went over him and then it ran off the track, and ran about the length of three or four railroad ties and stopped.
Now, if that theory is true — and I will say they all agreed that (his third car did not go over this man — if that theory is true, and this man McNivin passed under the car and the car passed on, he must have been under the car about the time Litz was thrown from the car, and it would seem from the facts of the case, the motion of the car and everything of that kind, they were over him before Litz was injured, and the force of the testimony is the third car did not run over McNivin at all, or onto him. It would seem from the evidence as it stands in this record that in order to have reached Litz the third car must have passed over the body of McNivin. Now, the position of that ear, as 1 have said, is left in great uncertainty. There is one witness, Bellman, who testifies he was on the second car, and be is testifying through an interpreter, and he is finally asked if the third car hit the ear he was on, and he says he thinks it did. He does not state any facts fom any observation made by him or anything he saw. He is asked as to the position of the ear following behind him, and is asked if he saw McNivin, and he says it was so dark he could not see him ; and he is asked about seeing Litz, and he says it was so dark he did not see him, and with this bare suggestion he thinks it must have been hit. We are left entirely in the dark as to where that car was. No man testifies as to its position after the accident, or where it stcod, or where it was placed.
There is another point of the testimony. Dr. Graefe was called to examine this wound. He dressed it, and Dr. Oook assisted him, and the two performed a surgical operation upon the plaintiff wnieh was a very difficult, and it seems in the end, a very successful operation. He says he was called about six o’clock, and that he went to see the patient. He made an examination of the limb and found that the leg was broken between the knee and the ankle as I understand it, on the lower third of the limb, as he expresses it. Two bones were broken, one in rather an oblique form, and the other in a transverse form. He says the wound was such that the bone had come underneath the flesh, protruding through the flesh, protruding through the clothing or drawers and pantaloons of the patient, and had actually run into the ground, for the end of the bones were entirely covered with earth and dirt and he washed them off. Now, it would seem, if the theory of the plaintiff was correct, that when he fell, he'fell off to the south and his left limb was lying upon the rails and the third car went over the limb. That simply would have cut or crushed his limb. The doctor testifies the larger muscles were not broken at all; the smaller muscles were broken some. It seems from the nature of the wounds at the time he went off and *652 struck the ground, some heavy body, presumably the wheels of the car he was on, must have struck that limb in such a form as to crush it down, and as it crushed it down the bone was driven into the earth; and I am unable to see how that could have occurred if the other car had run directly over the limb.
Now, with the testimony in this uncertain, indefinite condition, we are unable to see how the jury could rightfully draw from the evidence the conclusion that the third car had run over the limb of the plaintiff. We think the weight of the evidence is against that theory. But now assuming it did run over the limb, assuming that the statement of Mr. Litz is correct, for he is the only person who testifies as to the position of these cars, and that that car was within three feet of the car he was on at the time he was thrown from the car, and what is the result?
It is testified here that there is a rule of the company which requires these cars to be kept a certain distance apart, said to be 300 feet. It is said that rule is promulgated among the employes; it is in testimony by McCann he had communicated that rule to those employes, this gang of workmen; among others he had given it to the plaintiff. The plaintiff, however, denies that. He says he did not learn of that rule until after the 'accident occurred, but the other men who were upon the car testified they knew of the rule, that it had been communicated to them; and we think the inference is fair this knowledge had been communicated to this man. McCann testifies after they had started he observed his men were pumping a little actively and were inclined to push the car; he looked back and he saw that the other cars were in the rear, and the rear car was about 100 feet away, perhaps 120, and he thereupon motioned to the cars to keep back, and they proceeded to do so, and he knew no more of their advancing after that time.
We think it very clear that the men on the third car were approaching the second car so that it had come up within a short distance, not limiting it to three feet; that that was an act of negligence on the part of those employes, and an act of negligeneoe for which the company would not be responsible. It would be negligence of the employes of the plaintiff, because it is in proof here that the men on the rear car had no control over the second car. McCann, it is agreed, was the foreman, was in charge of these men, and was the responsible representative of the railway company. Neither party called as witnesses any of the men on the third car. Not a single one is called so far as we can see. No reason is given why they were not called; I don’t know why they were not, whether they still live here or claim they know nothing about the matter. I think I have stated all the material evidence that is to be found as to the position of these cars at the time of this injury.
The condition of this plaintiff and the injuries he received are such that appeal to the sympathies of a jury and the sympathies of a court. Nevertheless, the case must be tried upon those legal principles which are established in the jurisprudence of ths state and must govern the administration of justice among litigants.
Following these rules, we are clearly of opinion the jury were not warranted in finding a verdict for the plaintiff as it stands in this record. We trust if the case is tried again it will be tried upon the issues that are made in the pleadings, and if it ever comes before us again it will come with such light as to position *653 of these cars as will enable the court to judge better than it can at present as to the real cause of the accident.
J. M. Lemmon, Bowan & Reiter, for Plaintiff in Error.
Messrs. Fisher, Alvord, Merrill et al. for Defendant in Error.
Verdict set aside and cause remanded for a new trial.